**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CYNTHIA M. GAFFNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-714 |
| | ) Chief Judge Gary L. Lancaster |
| CAROLYN W. COLVIN,[1] ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Gary L. Lancaster
Chief Judge                          March __11__, 2013

## I.    Introduction

Plaintiff Cynthia M. Gaffney ("Gaffney") brings this action
pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial
review of the final decision of the Commissioner of Social
Security ("Commissioner") denying her application for
supplemental security income ("SSI") benefits under Title XVI of
the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f].  The
matter is presently before the Court on cross-motions for
summary judgment filed by the parties pursuant to Federal Rule
of Civil Procedure 56.  (ECF Nos. 10 & 14).  For the reasons

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013, succeeding former Commissioner Michael J. Astrue.  Social
Security History-Social Security Commissioners,
http://www.ssa.gov/history/commissioners.html (as visited on March 4, 2013).
Consequently, Acting Commissioner Colvin is now the official-capacity
defendant in this action.  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116
L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

that follow, the Commissioner's motion for summary judgment (*ECF No. 14*) will be denied, and Gaffney's motion for summary judgment (*ECF No. 10*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The Commissioner's decision will be vacated, and the case will be remanded for further consideration of Gaffney's application for SSI benefits.

## II. Procedural History

Gaffney protectively applied for SSI benefits on January 29, 2009, alleging that she had become "disabled" on February 27, 2007. (R. at 13, 107). Pennsylvania's Bureau of Disability Determination ("Bureau") denied the application on September 9, 2009. (R. at 53, 59). Gaffney responded on October 20, 2009, by filing a timely request for an administrative hearing. (R. at 65-68). On November 23, 2010, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") Paula Fow. (R. at 26). Gaffney, who was assisted by a non-attorney representative,[2] appeared and testified at the hearing. (R. at 29-45). Karen Krull ("Krull"), an impartial vocational expert, also testified at the hearing. (R. at 45-48). In a decision dated January 28, 2011, the ALJ determined that Gaffney

---

[2] The Act permits non-attorneys to represent claimants in Social Security disability proceedings conducted before the Commissioner. 42 U.S.C. § 406(a)(1).

2

was not "disabled" within the meaning of the Act. (R. at 10-21).

On February 8, 2011, Gaffney sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 7-9). The Appeals Council denied the request for review on March 30, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Gaffney commenced this action on May 30, 2012, seeking judicial review of the Commissioner's decision. (ECF Nos. 1 & 3). Gaffney and the Commissioner filed motions for summary judgment on November 2, 2012, and December 31, 2012, respectively. (ECF Nos. 10 & 14). These motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its

3

intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she]

4

is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two,

5

the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

6

> When the case was first here, we emphasized a simple
> but fundamental rule of administrative law.  That rule
> is to the effect that a reviewing court, in dealing
> with a determination or judgment which an
> administrative agency alone is authorized to make,
> must judge the propriety of such action solely by the
> grounds invoked by the agency.  If those grounds are
> inadequate or improper, the court is powerless to
> affirm the administrative action by substituting what
> it considers to be a more adequate or proper basis.
> To do so would propel the court into the domain which
> Congress has set aside exclusively for the
> administrative agency.

*Chenery Corp.*, 332 U.S. at 196.  The United States Court of

Appeals for the Third Circuit has recognized the applicability

of this rule in the Social Security disability context.

*Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).

Thus, the Court's review is limited to the four corners of the

ALJ's decision.  *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491

(W.D.Pa. 2005).

## IV. The ALJ's Decision

In her decision, the ALJ determined that Gaffney had not

engaged in substantial gainful activity subsequent to the date

of her application.  (R. at 15).  Gaffney was found to be

suffering from asthma, chronic obstructive pulmonary disease,

sensorineural hearing loss, bipolar disorder, migraine

headaches, a personality disorder, and a stomach impairment.

(R. at 15).  Although her stomach impairment was deemed to be

"non-severe," her remaining impairments were deemed to be

7

"severe" under the Commissioner's regulations.  (R. at 15); 20

C.F.R. §§ 416.920(a)(4)(ii), 416.920(c).  The ALJ concluded that

Gaffney's impairments did not meet or medically equal an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. at 15-17).

In accordance with 20 C.F.R. § 416.945, the ALJ assessed

Gaffney's "residual functional capacity"[3] as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined
> in 20 CFR 416.967(b) with no more than occasional
> postural maneuvers such as balancing, stooping,
> kneeling.  [sic] Crouching, crawling, and climbing;
> the claimant may not perform tasks requiring fine
> hearing capability, frequent telephone communication,
> or the need to speak over excessive background noise;
> the claimant is limited to simple, routine, and
> repetitive tasks that are not performed in a fast-
> paced production environment and which require no more
> than occasional interaction with supervisors,
> coworkers, or members of the general public.

(R. at 17).  Gaffney had "past relevant work"[4] experience as a

cashier.  (R. at 19, 46, 127).  Krull testified that, according

---

[3] The term "residual functional capacity" is defined as 'that which an
individual is still able to do despite the limitations caused by his or her
impairments."  *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir.
1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a).  The same
residual functional capacity assessment is used at the fourth and fifth steps
of the sequential evaluation process.  20 C.F.R. §§ 404.1545(a)(5)(i)-(ii),
416.945(a)(5)(i)-(ii).

[4] "Past relevant work" is defined as "substantial gainful activity" performed
by a claimant within the last fifteen years that lasted long enough for him
or her to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).
The Commissioner has promulgated comprehensive regulations governing the
determination as to whether a claimant's work activity constitutes
"substantial gainful activity."  20 C.F.R. §§ 404.1571-404.1576, 416.971-
416.976.

to the Dictionary of Occupational Titles, cashiers working in the national economy typically performed "semi-skilled"[5] tasks at the "light"[6] level of exertion.  (R. at 46).  She further stated that the duties of Gaffney's prior position had been performed at the "medium"[7] level of exertion.  (R. at 46).  Since Gaffney was deemed to be capable of engaging in only "unskilled"[8] work activities, it was determined that she could not return to her past relevant work.  (R. at 19-20, 47-48).

Gaffney was born on August 12, 1960, making her forty-eight years old on the date of her application.  (R. at 20, 107).  At that point, she was classified as a "younger person" under the

---

[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  20 C.F.R. §§ 404.1568(b), 416.968(b).
[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).
[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).
[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."  20 C.F.R. §§ 404.1568(a), 416.968(a).

Commissioner's regulations.[9]  20 C.F.R. § 416.963(c).  She became

a "person closely approaching advanced age" on August 12, 2010,

when she reached the age of fifty.  20 C.F.R. § 416.963(d).

Gaffney had the equivalent of a high school education[10] and an

ability to communicate in English.  (R. at 20, 29, 133); 20

C.F.R. § 416.964(b)(4)-(5).  Given the applicable residual

functional capacity and vocational assessments, the ALJ

concluded that Gaffney could work as a cleaner, sorter or

packer.  (R. at 20).  Krull's testimony established that those

jobs existed in the national economy for purposes of 42 U.S.C. §

1382c(a)(3)(B).[11]  (R. at 47).

## V.    Discussion

Gaffney stopped working on March 30, 2005, in order to care

for her children.  (R. at 126).  When she applied for SSI

benefits, she listed February 27, 2007, as her alleged onset

date.  (R. at 13, 107).  SSI benefits are not available for the

period of time preceding a claimant's application.  20 C.F.R. §

---

[9] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five.  20 C.F.R. §§ 404.1563(c), 416.963(c).

[10] Gaffney obtained her General Educational Development ("GED") certification in 1978.  (R. at 29, 133).  She later received training to work as a nurse's aide.  (R. at 29-30, 133).

[11] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

416.335. Therefore, the period of time relevant to this case began on January 29, 2009, and ended on January 28, 2011.[12] (R. at 21).

Gaffney's husband suffered from throat and head cancer. (R. at 31). He died in 2008. (R. at 31, 265, 379). This event apparently had a serious impact on Gaffney's mental state. (R. at 31, 265, 379). Gaffney's grief periodically rendered her "unable to eat." (R. at 265). She lost approximately sixty-five pounds. (R. at 265).

Dr. Apolonia Sinu, a treating psychiatrist, first evaluated Gaffney on March 21, 2008. (R. at 179-183). Gaffney continued to seek treatment from Dr. Sinu on an ongoing basis. (R. at 179-193). Dr. Sinu ultimately determined that Gaffney was suffering from major depressive disorder. (R. at 183).

Gaffney reported to the Heritage Valley Health System's Sewickley Valley Hospital ("Sewickley") on June 28, 2009,

---

[12] When the Appeals Council denied Gaffney's request for review, the ALJ's decision became the "final decision" of the Commissioner in this case. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The Court has jurisdiction to review only the Commissioner's "final decision." *Califano v. Sanders*, 430 U.S. 99, 108-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). Nothing in the Act authorizes judicial review of the Appeals Council's decision denying Gaffney's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Since Gaffney does not move for a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), the Court can consider only the evidence that was before the ALJ at the time of her decision. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011); *Matthews*, 239 F.3d at 592-595. Exhibits 1A through 19F were admitted into evidence at the hearing. (R. at 29). Exhibit 20F was submitted to the Appeals Council in support of Gaffney's request for review. (R. at 4-5). Given that Exhibit 20F was never presented to the ALJ, it cannot be considered for the purpose of determining whether her decision is supported by substantial evidence. *Chandler*, 667 F.3d at 360; *Matthews*, 239 F.3d at 592-595.

complaining of "severe abdominal pain." (R. at 199). Although
Dr. Sinu evaluated Gaffney on that occasion, Gaffney reported
that she was "psychiatrically stable," and that she "d[id] not
want any psychotropic medication changes or augmentation." (R.
at 202). According to Gaffney, she needed treatment only for
her "abdominal pain." (R. at 202).

At some point during the summer of 2009, Gaffney was again
hospitalized at Sewickley for abdominal pain. (R. at 315).
After waking up in the middle of the night and "freak[ing] out,"
Gaffney decided to leave the facility against medical advice.
(R. at 315). When Gaffney's relatives and friends refused to
pick her up, hospital personnel arranged to have her transported
home in a taxicab. (R. at 266).

Dr. Kerry Brace, a psychological consultant for the Bureau,
reviewed Gaffney's medical records in connection with her
application for SSI benefits. (R. at 256). On September 3,
2009, Dr. Brace reported that Gaffney was "able to meet the
basic mental demands of competitive work on a sustained basis
despite the limitations resulting from her impairment." (R. at
243). He specifically observed that Gaffney had never been
hospitalized because of her mental condition. (R. at 243). In
the narrative portion of his consultative report, Dr. Brace
stated as follows:

The claimant can perform simple, routine, repetitive
work in a stable environment. She can understand,
retain, and follow simple job instructions, i.e.,
perform one and two step tasks. She is capable of
working within a schedule and at a consistent pace.
She would be able to maintain regular attendance and
be punctual. Moreover, she would not require special
supervision in order to sustain a work routine. She
is capable of making simple decisions and accepting
instruction. Additionally, she can function in
production oriented jobs requiring little independent
decision making. Review of the medical evidence
reveals that the claimant retains the abilities to
manage the mental demands of many types of jobs not
requiring complicated tasks.

(R. at 243). Dr. Juan B. Mari-Mayans, a non-examining medical

consultant, opined on September 8, 2009, that Gaffney was

physically capable of performing an unlimited range of "light"

work. (R. at 258-264). The Bureau denied Gaffney's application

for benefits on September 9, 2009. (R. at 53, 59).

Dr. Eileen P. Neely is Gaffney's primary care physician.

(R. at 35-36). In a letter to the Bureau dated September 10,

2009, Dr. Neely stated that Gaffney "ha[d] not been able to hold

gainful employment" subsequent to her husband's death.[13] (R. at

265). Dr. Neely described Gaffney's "psychiatric disease" as

"the real underlying impairment that [was] prohibiting her from

holding employment." (R. at 266). It was suggested that

---

[13] On August 3, 2009, Dr. Neely received written correspondence from the Bureau
relating to Gaffney's application for SSI benefits. (R. at 265). She
evidently failed to respond until the day after the application was denied.
(R. at 265). It is not clear from the record whether the denial triggered
Dr. Neely's letter, or whether the timing of these two events was
coincidental.

Gaffney was suffering from bipolar disorder.  (R. at 266).  In

her letter, Dr. Neely went on to state as follows:

> The patient has presented within the past year with
> complaints of diffuse joint pains and claims she could
> not walk.  Her presentation was quite histrionic and
> the findings on physical exam were not proportionate
> to her complaints.  In examining her and taking a
> history, it is very difficult to objectively sort out
> the potential true symptoms and pathology from the
> embellished description.  I do think, however, this
> behavior is part of a true underling [sic] psychiatric
> disorder and that is our responsibility as physicians
> to try to sort this out and provide appropriate care
> for both the physical and the psychiatric disorders,
> which she may have.

(R. at 266).  On a "medical source statement" form provided by

the Bureau, Dr. Neely indicated that Gaffney had no physical

limitations.  (R. at 269-270).

Pennsylvania's Mental Health Procedures Act ("MHPA") [50 PA.

STAT. § 7101 et seq.] provides for the involuntary

hospitalization of those who, "as a result of mental illness,"

pose a "clear and present danger of harm to others" or to

themselves.  50 PA. STAT. § 7301(a).  Under circumstances

described in the MHPA, involuntary treatment may be authorized

by a physician for a period not to exceed 120 hours.  50 PA. STAT.

§ 7302.  Any additional periods of involuntary treatment must be

authorized by a judge or a mental health review officer after a

hearing conducted for the purpose of determining whether the

14

patient in question satisfies the relevant statutory criteria.
50 PA. STAT. §§ 7303-7305.

On December 8, 2009, Gaffney was involuntarily committed to
Sewickley's psychiatric unit.  (R. at 379-381).  This action was
triggered by a petition alleging that Gaffney had dropped lit
cigarettes on the floor of her apartment, choked her roommate,
and expressed a desire to "die to be with her dead husband."
(R. at 379).  Since Gaffney was deemed to be in need of
inpatient treatment for a period exceeding 120 hours, a hearing
was conducted pursuant to 50 PA. STAT. § 7303.  (R. at 379).
Instead of directly contesting her commitment, Gaffney
stipulated to an additional period of involuntary treatment not
to exceed ten days.[14]  (R. at 379).  She was discharged on
December 16, 2009.  (R. at 379-381).

In the aftermath of her hospitalization, Gaffney continued
to see Dr. Sinu for treatment.  These visits occurred every four
months.  (R. at 271).  In a "mental residual functional capacity
questionnaire" dated August 24, 2010, Dr. Sinu reported that
Gaffney was "[u]nable to meet competitive standards" in various
areas of work-related functioning.  (R. at 273-274).  Dr. Sinu

---

[14] A period of extended involuntary treatment authorized pursuant to 50 PA.
STAT. § 7303 cannot exceed twenty days.  50 PA. STAT. § 7303(h).  The parties
seeking a "certification for extended involuntary treatment" must prove the
applicable criteria by "clear and convincing evidence."  _In re: Jacobs_, 15
A.3d 509, 510 (Pa.Super.Ct. 2011).  Although the administrative record does
not contain copies of the documents filed in connection with the commitment
proceedings, a treatment note discussing Gaffney's "303 hearing" states that
she "stipulated for up to 10 days."  (R. at 379).

predicted that Gaffney's "impairments or treatment" would cause her to miss more than four days of work per month if she were to be employed on a full-time basis. (R. at 274). At the hearing held before the ALJ, Krull testified that no work existed in the national economy for an individual who needed to miss four or more days of work per month.[15] (R. at 47-48).

The ALJ accorded "great weight" to Dr. Brace's assessment of Gaffney's mental limitations. (R. at 19). Dr. Sinu's opinion was given "little weight." (R. at 19). In the relevant portion of her decision, the ALJ stated that she did not find Dr. Sinu's opinion to be consistent with the evidentiary record as a whole. (R. at 19).

Gaffney argues that the ALJ failed to properly weigh Dr. Sinu's opinion in accordance with 20 C.F.R. § 416.927.[16] (ECF No. 11 at 4-12). Under that regulation, a treating source's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [a claimant's] case record." 20 C.F.R.

---

[15] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117]. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

[16] In her brief, Gaffney mistakenly refers to 20 C.F.R. § 404.1527, which applies to claims for disability insurance benefits under Title II of the Act [42 U.S.C. §§ 401-433]. (ECF No. 11 at 4-7). Since she seeks an award of SSI benefits under Title XVI, the applicable regulation is 20 C.F.R. § 416.927.

§ 416.927(c)(2). Even when such an opinion is not afforded "controlling weight," it must still be given some consideration. *Gonzalez v. Astrue*, 537 F.Supp.2d 644, 660 (D.Del. 2008).

Opinions rendered by treating sources do not bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 1 (3d Cir. 2011). Every medical opinion, regardless of its source, must be afforded some consideration. *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992). Where a conflict exists between competing medical opinions, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Nonetheless, a residual functional capacity determination is not "supported by substantial evidence" if it is based solely on an administrative law judge's "own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The extent to which a claimant's impairments limit his or her ability to perform work-related tasks must be ascertained by reference to competent medical evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

Under certain circumstances, an opinion rendered by a non-examining consultant may be sufficiently probative to outweigh a contrary opinion put forth by a treating source. *Jones v.*

*Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Where all other factors are equal, however, the opinion of a treating source should be accorded more weight than an assessment submitted by a non-examining consultant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). That is especially true when psychiatric impairments are at issue. "In contrast to some physical impairments, which can be verified or discounted solely by reference to reports of objective medical tests, mental impairments are generally identified on the basis of a psychiatric professional's interactions with an impaired individual." *Haisley v. Sedgwick Claims Management Services, Inc.*, 776 F.Supp.2d 33, 50 (W.D.Pa. 2011).

Under the present circumstances, Dr. Brace's assessment did not provide the ALJ with a sufficient basis for rejecting Dr. Sinu's opinion. The probative force of any medical opinion must be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). When Dr. Brace completed his consultative report, he specifically observed that Gaffney had never been hospitalized because of her psychiatric impairment. (R. at 243). Gaffney, of course, was involuntarily committed three months later. (R. at 379-381). An involuntary commitment must be predicated on a determination that an individual is "severely mentally disabled." 50 PA. STAT. § 7301(a). Consequently, it

18

cannot be doubted that Gaffney's mental condition deteriorated after the submission of Dr. Brace's report. Since that report preceded the exacerbation of Gaffney's symptoms, it was not probative of her abilities and limitations during the period of time postdating her hospitalization.

Dr. Sinu completed her questionnaire on August 24, 2010. (R. at 271-274). By that time, eight months had elapsed since Gaffney's release from inpatient treatment. (R. at 271-274, 379-381). Dr. Sinu indicated that Gaffney's mental impairment was expected to last for at least twelve months. (R. at 274). In this respect, Dr. Sinu's assessment supported a finding that Gaffney was "disabled" within the meaning of the Act. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Because Dr. Brace never examined Gaffney in the first place, his opinion was not of the kind entitled to significant weight under the Commissioner's regulations. 20 C.F.R. § 416.927(c)(1). The diminished value of that opinion is magnified in this case, given the subsequent deterioration in Gaffney's condition that ultimately necessitated her hospitalization.[17]

---

[17] The Court acknowledges that a consultative report prepared in connection with the Bureau's consideration of a claim will almost always predate an administrative law judge's decision by several months. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011). It is the unanticipated change in Gaffney's condition, rather than the lapse of time between the completion of Dr. Brace's report and the issuance of the ALJ's

The ALJ was free to reject Dr. Sinu's assessment "only on the basis of contradictory medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). With respect to the period of time postdating Gaffney's hospitalization, Dr. Sinu's opinion was uncontradicted. Since the ALJ rejected that opinion solely on the basis of an outdated assessment, her decision denying Gaffney's application for benefits is not "supported by substantial evidence." *Doak*, 790 F.2d at 29.

A judicially-ordered award of benefits is proper only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). The existing record does not satisfy that standard. Aside from Dr. Sinu, no psychiatric professional assessed Gaffney's mental abilities and limitations in the aftermath of her hospitalization.[18] No consultative psychiatric evaluation was performed. Gaffney testified that her medications had partially alleviated the symptoms of her bipolar disorder, but that they had nevertheless left her with "no emotion." (R. at 40). There are several unanswered questions concerning the deterioration of Gaffney's

---

decision, that diminishes the probative value of Dr. Brace's opinion in this case.

[18] Prior to that hospitalization, Dr. Neely suggested that Gaffney's "psychiatric disease" was "prohibiting her from holding employment." (R. at 266).

mental condition during the fall of 2009, and the extent to
which her symptoms improved in response to the treatment
provided. Consequently, the proper remedy in this case is a
remand for further proceedings rather than an immediate award of
benefits. *Stevens v. Commissioner of Social Security*, 484
F.Supp.2d 662, 668-669 (E.D.Mich. 2007).

## VI. Conclusion

For the foregoing reasons, the Commissioner's motion for
summary judgment (*ECF No. 14*) will be denied. Gaffney's motion
for summary judgment (*ECF No. 10*) will be denied to the extent
that it requests an award of benefits but granted to the extent
that it seeks a vacation of the Commissioner's administrative
decision, and a remand for further proceedings. The decision of
the Commissioner will be vacated, and the case will be remanded
for further consideration of Gaffney's application for SSI
benefits. 42 U.S.C. § 405(g). The Commissioner must afford
Gaffney "an opportunity to be heard" during the course of the
upcoming administrative proceedings.[19] *Thomas v. Commissioner of
Social Security*, 625 F.3d 798, 800-801 (3d Cir. 2010).

AND NOW, this *11 th* day of March, 2013, IT IS HEREBY
ORDERED that the Defendant's motion for summary judgment (*ECF
No. 14*) is **DENIED**, and that the Plaintiff's motion for summary

---

[19] Although the Court cannot consider Exhibit 20F at the present stage, the
Commissioner should consider the documentary evidence contained therein on
remand. *Reefer v. Barnhart*, 326 F.3d 376, 381 (3d Cir. 2003).

judgment (*ECF No. 10*) is **DENIED** insofar as it seeks an award of benefits but **GRANTED** insofar as it seeks a vacation of the Commissioner's "final decision."  The decision of the Commissioner is hereby **VACATED**, and the case is **REMANDED** to the Social Security Administration for further consideration of the Plaintiff's application for supplemental security income benefits.

BY THE COURT:

Hon.  Gary L. Lancaster
Chief United States District Judge

cc:  All counsel of record